

**THOMAS J. CATLIOTA**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## at GREENBELT

| | | |
|---|---|---|
| In re: | * | Case No.   16-19880-TJC |
| The Hagerstown Block Company and | * | Case No.   16-19881-TJC |
| The Hagerstown Concrete Products, Inc. | * | Chapter   11 |
| Debtors | * | Jointly Administered Under 16-19880-TJC |
| *    *    *    *    *    * | * | |
| The Hagerstown Block Company and | * | |
| The Hagerstown Concrete Products, Inc. | * | |
| Movants | * | |
| vs. | * | Motion Nos.  94, 95, 98, and 99 |
| Brenda K. Solomon and | * | |
| Charlene R. West, | * | |
| Respondents | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM OF DECISION

Debtors Hagerstown Block Company and Hagerstown Concrete Products, Inc. object to

the claims of Brenda K. Solomon and Charlene R. West, seeking to subordinate them under 11

U.S.C. §510(b) as claims for damages arising from the purchase or sale of a security.  The parties

agree that there are no material facts in dispute and that the issue is resolved by the application of

law to the undisputed facts.  For the reasons that follow, the court concludes that the claims are

subject to the subordination provisions of §510(b), and will sustain the objections.

1

This court has subject matter jurisdiction pursuant to 28 U.S.C. §§1334(b) and 157(a) and Local Rule 402 of the United States District Court for the District of Maryland.  The court has authority to enter a final order in this dispute under 28 U.S.C. §157(b)(2)(A), (B) and (O).

**Findings of Fact**

On July 22, 2016, Debtors Hagerstown Block Company ("HBC") and Hagerstown Concrete Products Inc. ("HCP") (collectively, "Debtors") each filed a voluntary petition for relief under Chapter 11.  They remain in possession of their assets and continue to operate and manage their affairs as debtors in possession.

Debtors were founded more than sixty years ago by Theodore Myers and his wife Helen Myers.  HBC manufactures and distributes concrete products, clay bricks, and other building materials and supplies.  HCP is a management company and holds much of the real estate and personal property used by HBC.  Debtors have common ownership.

Debtors were successful for decades and were able to make shareholder distributions for many years.  Debtors' fortunes changed dramatically following the real estate recession in 2008 and 2009.  For example, according to Debtors' combined disclosure statement, Debtors report that HBC generated annual revenues of $15.7 million in 2006, but only $6.9 million in 2010.  ECF 72 at p. 5.  Currently, revenues are approximately $5 million.  For the combined four years of 2011 through 2014, losses amounted to $1,871,478.  *Id*.

For many years, all of the outstanding common stock of Debtors was owned by its founders, Mr. and Mrs. Myers, and their children.  Eventually, ownership passed to their descendants.  By 2005, both founders had died, and a number of their children had been bought out or died.

On or about September 8, 2005, Debtors and all of the then owners of the common stock entered into an Amended and Restated Stockholders' Agreement (the "Stockholders' Agreement"). One of the stockholders who was a party to the Stockholders' Agreement was Beatrice Lowry. She subsequently died and her shares passed to the Beatrice and William Lowry Trust. After William Lowry died in 2011, their three children became successors in interest to the shares pursuant to the trust and testamentary documents. The children were Curtis Lowry and the two claimants here, Brenda K. Solomon and Charlene R. West (collectively, "Claimants"). Mr. Lowry accepted his shares and is now the owner of his proportionate share of the stock.

Claimants did not want to become the owners of the shares. They exercised their right under the Stockholders' Agreement to have Debtors repurchase the shares. A dispute arose between Debtors and Claimants and, in October 2013, Debtors filed suit in the Circuit Court for Washington County, Maryland, seeking a declaratory judgment of their duties and obligations under the Stockholders' Agreement. The Circuit Court referred the case to binding arbitration. That decision was affirmed on appeal and the matter was sent to arbitration.

On May 23, 2016, the arbitration panel issued a final award. The panel determined that Claimants were entitled each to 67.95 shares of HBC stock and 28.58 shares of HCP stock. It further determined that each claimant was entitled to $225,000 for her shares and was also entitled to legal fees and costs. In a subsequent ruling issued on June 28, 2016, the panel awarded Claimants $162,250 in legal fees, and $22,611 in costs. The Circuit Court entered a docket entry recording the arbitration award on July 25, 2016, three days after Debtors filed their petitions.

Ms. Solomon timely filed Claim No. 8.  She asserts a general unsecured claim in the

amount of $409,861 based on the award.  The amount is based on the panel's determination that

she is entitled to $225,000 for the shares, $162,250 in legal fees, and $22,611 in costs.  Ms. West

timely filed Claim No. 9 also asserting a general unsecured claim in the same amounts based on

the award.

Debtors filed amended objections to the claims on February 24, 2017.  ECF 94, 95.

Claimants filed oppositions to the objections, ECF 98, 99, and the court held a hearing on the

objections and the responses on April 14, 2017.

## Conclusions of Law

The dispute between the parties is raised in the context of Debtors' objection to the

claims.  The Bankruptcy Code establishes a burden-shifting framework for proving the amount

and validity of a claim.  The creditor's filing of a proof of claim constitutes prima facie evidence

of the amount and validity of the claim.  11 U.S.C. § 502(a)[1]; Fed. R. Bankr. P. 3001(f).  The

burden then shifts to the debtor to object to the claim.  §502(b); *Canal Corp. v. Finnman (In re*

*Johnson)*, 960 F.2d 396, 404 (4th Cir. 1992).  In its objection, the debtor must introduce evidence

to rebut the claim's presumptive validity.  Fed. R. Bankr. P. 9017; Fed. R. Evid. 301; 4 Collier

on Bankruptcy ¶ 501.02[3][d] (16th ed. 2017).  If the debtor carries its burden, the creditor has

the ultimate burden of proving the amount and validity of the claim by a preponderance of the

evidence.  *Stancill v. Harford Sands Inc. (In re Harford Sands Inc.)*, 372 F.3d 637, 640 (4th Cir.

2004).

Here, Debtors contend that the claims are unenforceable as general unsecured claims

under §510(b).  Specifically, debtors assert that the claims are "for damages arising from the

---

[1] Unless otherwise noted, all citations references are to the U.S. Bankruptcy Code, 11 U.S.C. §§101, *et seq.*, as
currently in effect.

purchase or sale" of securities of Debtors and must be subordinated under §510(b).  Claimants

argue that §510(b) is no longer applicable once "former shareholders . . . divest themselves of all

indicia of ownership," and that occurred when they received the award and judgment.  ECF 99 at

p. 1-2.

The award consisted of two components: $225,000 for the redemption of stock and

$184,861 for fees and costs.  The court will address each in turn.

*The Award for the Purchase of the Common Stock.*

Section 510(b) provides:

> For the purpose of distribution under this title, a claim arising from rescission of a
> purchase or sale of a security of the debtor or of an affiliate of the debtor, for
> damages arising from the purchase or sale of such a security, or for
> reimbursement or contribution allowed under section 502 on account of such a
> claim, shall be subordinated to all claims or interests that are senior to or equal the
> claim or interest represented by such security, except that if such security is
> common stock, such claim has the same priority as common stock.

§510(b).  "The clear mandate of §510(b) is that shareholder claimants will not be permitted to

elevate their interests from the level of equity to general claims."  4 Collier on Bankruptcy ¶

510.04.  "Section 510(b) serves to effectuate one of the general principles of corporate and

bankruptcy law: that creditors are entitled to be paid ahead of shareholders in the distribution of

corporate assets."  *Racusin v. Am. Wagering, Inc. (In re Am. Wagering, Inc.)*, 493 F.3d 1067,

1071 (9th Cir. 2007).  A primary purpose of §510(b) "is to prevent disappointed shareholders . . .

from recouping their investment in parity with unsecured creditors."  *Id.* at 1071-72.  "Congress's

larger concern [in enacting §510(b)] was the effort of disaffected stockholders to recapture their

investments from the debtors, regardless of the exact nature of their claims.  *SeaQuest Diving LP*

*v. S & J Diving Inc. (In re SeaQuest Diving LP)*, 579 F.3d 411, 421 (5th Cir. 2009) (citing *In re*

*Granite Partners, L.P.*, 208 B.R. 332, 337 (Bankr. S.D.N.Y. 1997)).

Courts agree that a claim must be subordinated if there is a sufficient "nexus or causal relationship between the claim and the purchase" or sale of securities. *In re Telegroup, Inc.*, 281 F.3d 133, 138 (3d Cir. 2002). Applying this standard, the court concludes that the claims fall squarely within the language of section §510(b), and squarely within the class of claims intended to be subordinated by the provision.

In the demand for arbitration, Claimants sought "payment for their shares in accordance with the Stockholders' Agreement." Demand for Arbitration, Movant's Hearing Ex. 5 at ¶5. The panel concluded:

- Claimants had standing to assert their claims to the redemption of their stock in the Debtors.
- Claimants each had the right to force redemption of their stock in the Debtors.
- The Debtors breached the Stockholders' Agreement by filing suit on October 17, 2013, and thereafter refusing to redeem Claimants' stock.
- Claimants were each entitled to an award of $225,000.00 with interest at the rate of 2.25% for the redemption of their stock in the Debtors payable as described in the award.

Final Award, Movant's Hearing Ex. 6 at ¶V.A, B, C, D. The language of the demand for arbitration and the award leaves no doubt that there is a direct causal relationship between the claim and Debtors' breach of the obligation under the Stockholders' Agreement to purchase of the stock. The award liquidates the claim, and serves as the basis for the claim. Claimants hold "claims for damages arising from the purchase or sale" of a security under §510(b).

Claimants do not dispute that they asserted claims in the arbitration arising from the failure of Debtors to purchase their stock. They contend that the panel's award converted their claims from claims of shareholders to claims of creditors. They argue that they are no longer shareholders in light of the award, but now are creditors that hold essentially a debt instrument. This argument is unavailing.

6

In *Pensco Tr. Co. v. Tristar Esperanza Props., LLC (In re Tristar Esperanza Props., LLC)*, 782 F.3d 492 (9th Cir. 2015), the Ninth Circuit faced the same issue present here.  The claimant obtained an arbitration award that was reduced to a judgment prepetition for the breach of an agreement to buy her interest in an LLC.[2]  She argued that the judgment converted her claim to a fixed liquidated debt.  She further argued that for §510(b) to apply, the claimant must enjoy the rights and privileges of equity ownership as of the petition date and, because of the judgment, she did not hold those rights; she held only the rights of a general creditor.

The Ninth Circuit rejected the claimant's arguments.  It stated:

> The critical question for purposes of § 510(b), then, is not whether the claim is debt or equity at the time of the petition, but rather whether the claim arises from the purchase or sale of a security. The claim must be subordinated if there is a sufficient "nexus or causal relationship between the claim and the purchase" or sale of securities.

*Tristar*, 782 F.3d at 497 (citations omitted).  The court also rejected the claimant's argument that the arbitration award and entry of judgment were sufficient to take the claim out of the reach of §510(b):

> Moreover, [claimant's] view that the term "damages" necessarily excludes fixed, admitted debts would lead to a result manifestly at odds with the intent of Congress. It would result in most judgments being insulated from subordination, because once a final judgment is issued, the amount owed is generally fixed and no longer the subject of dispute. Nothing suggests that Congress intended to distinguish claims based on judgments or other fixed debts from unliquidated claims arising from the same wrong. Rather, Congress sought to subordinate claims, whether liquidated or not, that unfairly shift to creditors risks associated with stock ownership. Accordingly, O'Donnell's claim falls under the broad umbrella of damages.

*Id.* at 495-96 (footnote and citation omitted).

The court adopts the rationale of *Tristar*, at least as it applies to claims that have been liquidated or reduced to judgment through arbitration or judicial proceedings.  The court finds

---

[2] For purposes of the decision reached here, the court will consider it immaterial that the Claimants' judgment was entered post-petition by the Circuit Court.

further support for this position in the Bankruptcy Code's definition of the word "claim".

Section 101(5) defines claim as "a right to payment, whether or not such right is reduced to

judgment, liquidated, unliquidated, [or] fixed . . . ."  §101(5)(A).  Section 510(b) applies to a

"claim" for damages arising from the purchase or sale of a security.  Quite literally, §510(b)

applies to "a right to payment, whether or not such right is reduced to judgment, liquidated,

unliquidated, [or] fixed" for "damages arising from the purchase or sale" of the security of

Debtors.  This is precisely what Claimants hold here.  In the arbitration, the Claimants asserted a

claim for damages arising from the purchase of a security; the panel awarded them damages

arising from the purchase of a security.  The claim does not cease being a claim for damages

arising from the purchase of a security merely because it has been liquidated or reduced to

judgment.  *See also SeaQuest*, 579 F.3d at 424 ("The fact that a claim has been reduced to a

judgment does not deprive the court of the ability to look behind that judgment to determine

whether it "arises from" a rescission of a security of the debtor.").

Claimants rely on *Official Comm. of Unsecured Creditors v. Am. Capital Fin. Servs. (In

re Mobile Tool Int'l, Inc.)*, 306 B.R. 778 (Bankr. D. Del. 2004).  There, the debtors were parties

to a stockholder agreement obligating them to repurchase shares held by the claimants, who were

officers of the debtors.  Prior to the petition, the claimants gave notice of their intent to have their

shares purchased, and the debtors issued promissory notes for the shares.  The debtors

subsequently filed chapter 11 petitions.  The claimants filed claims based on the unpaid amounts

due under the notes.  The debtors sought to subordinate the claims under §510(b).

The court rejected debtors' attempt to subordinate the notes.  The court held that the

nexus or causal connection required to subordinate stock under §510(b) exists where stock is

retained by the claimant.  "When the stock is exchanged and a separate debt instrument is issued

8

by the debtor, however, the claimant is converted from an owner of stock to a creditor. Such is the case here." *Id*. at 781.  The court explained it rationale:

> Moreover, the Defendants' claims in this case do not resemble the type of transactions that section 510(b) seeks to subordinate. The purpose of section 510(b) is to prevent shareholders, who assume the risk of a business' failure by investing in securities rather than debt instruments, from filing claims as creditors when the debtor does fail. The statute was designed to prevent stockholders from reaping the benefit of unlimited profits without also fully accepting the inherent risks of ownership, namely loss of their investment.

*Id*. at 782 (citation omitted).

The holding of *Mobile Tool* does not apply here.  In *Mobile Tool*, the debtors and claimants voluntarily extinguished the repurchase obligation under the stockholders agreement and converted it to a new obligation in the form of a promissory note.  The exchange of the debt instrument for the repurchase obligation terminated the causal connection between the sale obligation and the claim because, in essence, the purchase transaction was completed and the former shareholders now held only debt.

That is not the case here.  Claimants hold claims, liquidated to be sure, and reduced to judgment, but nevertheless claims that directly arise from debtors' breach of the Stockholders' Agreement.  The claims are for "damages arising from" the purchase of a security of Debtors, as established by the arbitration award and the claims are subject to subordination according to the language of §510(b).

Claimants also rely on *Burtch v. Gannon (In re Cybersight LLC)*, Civil Action No. 04-112 JJF, 2004 WL 2713098 (D. Del. Nov. 17, 2004), a case in which the claimant obtained an arbitration award and judgment against the debtor prior to the petition for his interest in an LLC. The court applied the rationale of *Mobile Tool*, observing that "there is no material difference between the exchange of a promissory note for equity interests, which has been held not to be

subject to Section 510(b), *see Mobile Tool*, 306 B.R. at 781, and the judgment [claimant]

received in this case." *Cybersight*, 2004 WL 2713098 at *4. The court disagrees with this

observation and, as stated above, concludes that the claim does not cease being a "claim for

damages arising from the purchase of a security" merely because it has been liquidated or

reduced to judgment.

*The Award for Attorney Fees and Costs.*

Section 510(b) also subordinates claims "for reimbursement or contribution allowed

under section 502 on account of" a claim arising from the purchase or sale of a security.

§510(b). In light of this language, courts routinely subordinate claims for attorney fees and costs

that accompany stock purchase claims under §510(b). *See e.g., In re Touch Am. Holdings, Inc.*,

381 B.R. 95, 106 (Bankr. D. Del. 2008) (subordinating the indemnification claims of officers and

directors pursuant to §510(b)); *In re Mid-Am. Waste Sys., Inc.*, 228 B.R. 816, 829 (Bankr. D.

Del. 1999) (finding the plain language of §510(b) unambiguous in holding that the officers'

directors' reimbursement claims for attorney's fees would be subordinated); *In re De Laurentiis*

*Entm't Grp., Inc.*, 124 B.R. 305, 308 (C.D. Cal. 1991) ("Reimbursement by definition includes

indemnification, and indemnification naturally includes recovery of attorneys' fees.").

Here, Claimants assert their claims for the repayment of attorneys' fees and costs as

general unsecured claims. These claims, however, are for reimbursement of attorneys' fees and

costs allowed on account of a claim for damages arising from the purchase or sale of a security

of the Debtors. Therefore, the claims are subject to subordination under §510(b).

## Conclusion

For the reasons stated above, the court will sustain the objection to the Claim Nos. 8 and

9 to the extent the claims are asserted as general unsecured claims, and will allow the claims as

having the same priority as holders of the common stock of Debtors.

cc:     Debtors
        Counsel for Debtors
        Brenda K. Solomon
        Counsel for Brenda K. Solomon
        Charlene R. West
        Counsel for Charlene R. West


**End of Memorandum of Decision**